IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACCO BRANDS USA LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>PERFORMANCE DESIGNED PRODUCTS LLC,<br><br>  Defendant. | Civil Action No. 23-437-GBW |

## MEMORANDUM ORDER

Pending before the Court is Plaintiff ACCO Brands USA LLC's ("ACCO" or "Plaintiff") Motion for Reargument of the Court's Memorandum Order (hereinafter, the "Order," D.I. 18) dismissing the case for lack of personal jurisdiction and improper venue and denying ACCO's request for jurisdictional discovery. D.I. 19. Defendant Performance Designed Products LLC ("PDP") objects to Plaintiff's Motion. D.I. 20. For the following reasons, Plaintiff's Motion for Reargument is DENIED

I. **LEGAL STANDARD**[1]

A motion for reargument/reconsideration is not an appropriate vehicle to reargue issues that the court has already considered and decided. *See Justice v. Attorney Gen. of Del.*, 2019 WL 927351, at *2 (D. Del. Feb. 26, 2019); *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990). Rather, a motion for reargument is permitted to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). To succeed on such a motion, a party must demonstrate one of the

---

[1] The Court writes for the benefit of the parties who are already familiar with the pertinent background facts.

1

following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.*

## II.   DISCUSSION

Plaintiff moves for reargument of the Court's Order dismissing the case for lack of personal jurisdiction over Performance Designed Products LLC ("PDP") and improper venue on grounds that: (1) "[t]he Court misapprehended the relevance of PDP's sales of patent-embodying products and contracts with Delaware businesses to distribute those products in Delaware" and (2) the Court's Order failed to properly consider PDP's emails and videoconferences with ACCO as "other activities supporting personal jurisdiction. D.I. 20 at 1-8. Finally, Plaintiff contends that the Court erred in denying Plaintiff's request for jurisdictional discovery because "ACCO's allegations [were] not 'frivolous' or 'bare.'" *Id.* at 9. For the reasons stated below, the Court disagrees with each of Plaintiff's grounds for reargument and DENIES Plaintiff's Motion.

### a. *The Court did not misapprehend PDP's sales of patent-embodying products and contracts with Delaware businesses.*

In support of its Motion for Reargument, Plaintiff contends that the Court's Order misapprehends the relevance of PDP's sales of patent embodying products and contracts with Delaware businesses. *Id.* at 1-2. According to Plaintiff, Federal Circuit precedent "has routinely found that sales and distributions of the patent-embodying products sold by the patentee are relevant 'other activities' in the minimum contacts analysis." *Id.* at 2. Thus, Plaintiff contends that the Court erred in finding that PDP's sales did not constitute "other activities" justifying the Court's exercise of jurisdiction over PDP. *Id.* For the following reasons, the Court disagrees.

As to Plaintiff's claim that the Federal Circuit has "routinely found" the sale of patent-embodying products to constitute "other activities," the Court finds that Plaintiff misconstrues the

2

Federal Circuit's holdings. Indeed, in each case cited by Plaintiff, the Federal Court did not find that the sale of patent-embodying products would constitute "other activities" for purposes of establishing personal jurisdiction. Rather, the Federal Circuit recognized that the sale of patent-embodying products when made *as part of an exclusive licensing agreement* could justify a court's exercise of personal jurisdiction. *See, e.g., Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (noting that defendant purposefully availed itself of the facilities of the state of Washington by "appoint[ing] Dentsply, [a Washington licensee,] as the '*exclusive worldwide distributor*' of its dental implant products[] [and] grant[ing] Dentsply the [exclusive] right to distribute the products") (emphasis added); *Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*, 444 F.3d 1356, 1366-68 (Fed. Cir. 2006) (finding personal jurisdiction where, "in addition to sending letters into the forum state, which we presume qualify as 'cease and desist' letters, [defendant] [] entered into an *exclusive license* with PamLab, a company that, while not headquartered or incorporated in Florida, conducts business in Florida") (emphasis added).; *Akro Corp. v. Luker*, 45 F.3d 1541, 1548 (Fed. Cir. 1995) ("The case at bar involves an additional activity aimed at the forum state—namely, the patentee's exclusive licensing of one of the accused infringer's competitors within the forum state."). In each instance, the licensee's status as the exclusive licensee with the right to produce patent-embodying products was critical to the Federal Circuit's finding that the licensee's in-state sales were "other activities" establishing the patentee's minimum contacts with the forum state.[2]

---

[2] *See, e.g., Breckenridge Pharm.*, 444 F.3d at 1366 ("[T]he crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there. Where a defendant-licensor has a relationship with an exclusive licensee headquartered or doing business in the forum state, the inquiry requires close examination of the license agreement . . .[to see if] the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or

3

Indeed, in *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324 (Fed. Cir. 2008), the Federal Circuit explained why an exclusive license, as opposed to a general license to sell a product, would constitutes "other activities" for purposes of establishing personal jurisdiction. There, the Federal Circuit clarified that under its precedent:

> a defendant patentee's mere acts of making, using, offering to sell, selling, or importing products—whether covered by the relevant patent(s) or not—**do not**, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement, invalidity, and/or unenforceability. Thus, we hold that **such sales do not constitute such "other activities" as will support a claim of specific personal jurisdiction over a defendant patentee**. . . . However, based on our precedent, . . . if the defendant patentee purposefully directs activities at the forum which relate in some material way to the enforcement or the defense of the patent, those activities may suffice to support specific jurisdiction. **For example, when the patentee enters into an exclusive license or other obligation relating to the exploitation of the patent by such licensee or contracting party in the forum**, the patentee's contractual undertaking may impose certain obligations to enforce the patent against infringers.

*Id.* at 1335-36 (emphasis added). According to the *Avocent* court, by executing an exclusive license, the patentee takes on an obligation to defend and protect the license-holder's right to exclude others from practicing the patent and, because of this on-going obligation, "the patentee may be said to purposefully avail itself of the forum and to engage in activity that relates to the validity and enforceability of the patent." *Id.* at 1336.

The Federal Circuit in *Avocent* also explained that "mere evidence of sales within the forum of products covered by the relevant patent(s)," on the other hand, were "insufficient to guarantee specific personal jurisdiction over the patentee." *Id.* This would be the case, according to the Federal Circuit, even where the patentee entered multiple licensing agreements "because 'none of licenses [would] require [the patentee] to defend or pursue infringement actions involving the [relevant] patent, nor require [the patentee] to be so nearly involved with its licensees as was the

---

granting the licensor the right to exercise control over the licensee's sales or marketing activities.").

4

case with [] exclusive licensee[s]." *Id.* (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt*, 148 F.3d 1355, 1362 (Fed. Cir. 1998) (declining to find specific personal jurisdiction where patentee entered thirty-four non-exclusive licenses to sell the patented product in the forum state)); *see also Breckenridge Pharm.*, 444 F.3d at 1366 (noting that Federal Circuit caselaw has found the exercise of personal jurisdiction to be improper where "the defendant has successfully licensed the patent in the forum state, even to multiple non-exclusive licensees, but does not, for example, exercise control over the licensees' sales activities and, instead, has no dealings with those licensees beyond the receipt of royalty income").

Given the above, minus allegations that PDP's patent-embodying products were sold in Delaware by an exclusive licensee, the mere act of executing a license with a Delaware corporation does not constitute "other activities." Because Plaintiff did not allege that PDP executed an exclusive license arrangement with a Delaware corporation or a corporation selling the patent-embodying products in Delaware, the Court did not err in finding that PDP's sales of patent-embodying products were not relevant to the Court's personal jurisdiction analysis.

      b. *The Court did not discount PDP's emails and videoconferences with ACCO.*

As to Plaintiff's claims that the Court discounted PDP's emails and videoconferences with ACCO as "other activities," the Court finds that Plaintiff misapprehends the Court's findings regarding the communication between the parties that followed ACCO's infringement letter. *See* D.I. 19 at 4-5. In its Order, the Court found that the communication between the parties were merely attempts by PDP to settle their infringement disputes out of court, and the Court noted that the attempts ultimately failed to end in any licensing agreement or collaboration. D.I. 18 at 7-8. Thus, as the Court's Order explained, this matter was unlike *Inamed Corp. v. Kuzmak*, 249 F.3d 1356 (Fed. Cir. 2001), where the Federal Circuit found that "the combination of [an] infringement

letter and [] *negotiation efforts which culminated in four license agreements* with Inamed [was] sufficient" to establish minimum contacts and comport with due process." *Id.* at 7.

In finding that the emails and videoconferences in this matter did not establish sufficient minimum contacts and comport with due process, however, the Court did not, as Plaintiff claims, "discount" PDP's enforcement letters because they were sent to Washington, and the Court did not "discount" the videoconferences because they were "virtual." D.I. 19 at 5-6. Rather, the Court found that PDP's emails and videoconferences, irrespective of where or how they occurred, were insufficient to subject PDP to the Court's jurisdiction because "nothing came to fruition from these [discussions]." D.I. 18 at 8. As the Order explains, PDP's attempts to settle the matter out of court, *without more* (e.g., without resulting in any agreement or collaboration), "should not serve as the sole basis for finding minimum contacts." *Id.*

Indeed, to support its finding, the Court relied on the Federal Circuit's decision in *Apple Inc. v. Zipit Wirelisss, Inc.*, 30 F.4th 1368 (Fed. Cir. 2022) and *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998), where the Federal Circuit emphasized that "a right holder should be permitted to send a notice letter to a party in a particular forum to try to settle disputes without being haled into court in that forum." As the Federal Circuit in *Apple* explained, "[u]nder [Federal Circuit] precedent (as well as that of our sister circuits), this policy *must be considered* in determining whether the exercise of jurisdiction would be reasonable and fair." 30 F.4th at 1377. Unlike *Apple* where the Federal Circuit found minimum contacts where the parties' communication "extend[ed] over the course of several years and reach[ed] beyond license negotiations to include the sale of its patent," *id.* at 1376, 1380, PDP's communication with ACCO were less extensive in time and scope. Thus, the Court found that PDP's emails and videoconferences with ACCO were nothing more than attempts to settle their dispute out of court.

6

D.I. 18 at 8. Because this holding is consistent with Federal Circuit precedent, the Court did not err in finding that PDP's emails and videoconferences were insufficient to subject PDP to personal jurisdiction.

Having found no manifest errors of law or fact in the Court's Order denying personal jurisdiction over PDP, the Court denies Plaintiff's request for reargument. Because Plaintiff only challenges the Court's decision on venue "for the same reasons," Plaintiff's request for reargument as to venue is similarly denied.[3] D.I. 19 at 8.

### III. CONCLUSION

WHEREFORE, at Wilmington this 18th day of June, 2024, **IT IS HEREBY ORDERED** that Plaintiff ACCO Brands USA LLC's Motion for Reargument (D.I. 19) is **DENIED**.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff's request for reargument of the Court's decision denying jurisdictional discovery is denied. The Court agrees with Defendant that a jurisdiction analysis in the context of a declaratory judgment focuses on the defendant's enforcement activities in the forum. D.I. 20 at 10; *Avocent Huntsville Corp.*, 552 F.3d at 1332. Because Plaintiff seeks jurisdictional discovery "to learn the full extent of PDP's contacts with Delaware," Plaintiff has failed to present factual allegations that suggest "with reasonable particularity" the possible existence of minimum contacts between PDP and the state of Delaware. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). Accordingly, the Court did not err by denying Plaintiff's request for jurisdictional discovery. D.I. 18 at 10.